MABEL HOBBS, Administratrix, Appellee, v. HENRY T. TRAUT et al., Appellants.

No. 42426.

NOVEMBER 20, 1934.

McNett, Kuhns & Brown, and J. V. Gray, for appellants.

Ralph H. Munro, and McCoid, McCoid & McCoid, for appellee.

1266

KINTZINGER, J.—-The collision occurred at night on September 3, 1930, on primary road No. 34 about two miles east of Fairfield, Iowa. The decedent, C. Vern McNeeley, and a companion named Hamilton, were traveling on a motorcycle in an easterly direction, away from Fairfield; and defendant Henry Traut, with two companions in the front seat, was, with the consent of the owner, driving an Essex car owned by the defendant Mary J. Jordan, now deceased, in a westerly direction towards Fairfield. Shortly prior to the collision, a Mr. McCormack, accompanied by a Mr. Roach, was driving a Maxwell car on the same highway in a westerly direction ahead of the Essex car. Traut was driving the Essex faster than the Maxwell, and intended to pass around it. At that time the decedent's motorcycle was approaching the two automobiles in the center of the south half of the pavement and on its right side. Lights on all vehicles were lit. The light on the motorcycle was a spot light and was seen by the drivers of both the Maxwell and Essex cars for a distance of over 40 rods before the collision occurred There is a conflict in the evidence as to the character of the light on the motorcycle. Some testimony shows it was equipped with a spot light which could be seen for a distance of 500 feet, and threw sufficient light ahead to reveal a person or object on the road more than 75 feet away. Decedent's brother later used the same light on a tractor and testified that it would throw a sufficient light to reveal a person or object on the roadway more than 75 feet ahead. Other evidence tended to show that the motorcycle light appeared small and resembled a lantern. The lights on the Essex and Maxwell cars were properly equipped and lit at the time.

There was also conflict in the evidence as to the speed of the motorcycle. The evidence on behalf of plaintiff tended to show it was proceeding at 40 or 45 miles an hour, while the defendant's evidence tended to show that it was traveling about 60 miles an hour. The Essex was traveling 40 or 45 miles per hour, and the Maxwell 25 or 30 miles per hour. Some of the evidence tended to show that when the motorcycle was about 100 feet ahead of the Maxwell car, the Essex car crossed to the left over the center line of the paving and about 25 or 50 feet behind the Maxwell. The witness Willits, who was on the seat with defendant's driver, said: "Q. How many feet east of the point of collision was your car when you pulled across the black line to the south side of the pavement? A. * * * About 25 feet." The motorcycle then turned to the

right side of the paving, but defendant's car continued to cross the paving, and a collision between the two vehicles occurred just off the right or south edge of the paving. As a result of the collision both young men on the motorcycle were killed.

Before attempting to pass the Maxwell car, defendant's driver saw a light, which he said looked like a lantern on a wagon approaching on the south side of the road. Defendant's driver thought the light was about 1,000 feet away and that he had time to pass around the Maxwell before meeting it. He failed to return to the north side of the road, but he continued on across the pavement and a collision occurred.

When the driver of the Maxwell car first saw the light on the motorcycle, it was about 40 rods away. He saw this light continuously until the motorcycle passed him. The Maxwell driver saw the flash of lights from the Essex car on his left as it was approaching from the rear. When he saw the flash of lights from the Essex, the motorcycle was about 100 feet west of his car, and he then turned to the north side of the road. He and his companion both say that neither the Essex nor the motorcycle slackened their speed before the collision, and that the collision occurred about 10 or 20 feet behind the Maxwell.

There is also a conflict in the evidence as to where and when the defendant's car turned south to pass around the Maxwell. Some of defendant's witnesses testify that the Essex had caught up to and was partially alongside of the Maxwell car before the collision, while other testimony tends to show that the defendant's car had not reached the Maxwell at the time of the collision, but was from 10 to 20 feet behind it. This evidence bears upon the question as to whether or not the defendant's driver could have turned his car back onto the north side of the roadway behind the Maxwell car to avoid a collision. Without relating the evidence on these questions in detail, it is sufficient to say from an examination of the record that there was sufficient evidence on both sides of these questions to take them to the jury.

I. It is contended that the court erred in giving that part of instruction No. 10 as follows:

"It is further provided by law that persons in vehicles including motor vehicles, meeting each other in the public highway, shall give one half of the traveled way thereof by turning to the right. It was the duty of defendant, Henry T. Traut, at the time in ques-

tion to obey these provisions of law. *If he did not do so then he is guilty of negligence unless he has shown a legal excuse for such failure to observe these requirements of law,* and the burden of proof is upon defendant to show by the preponderance of evidence such legal excuse." (Italics ours.)

The court then defines the term "legal excuse" in accordance with Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552.

The complaint against this instruction is that it fails to instruct the jury that a failure to give one-half of the roadway, etc., constitutes only "prima facie evidence of negligence".

Owing to the confusion of the Iowa cases in respect to when the violation of a statutory requirement constitutes negligence, as a matter of law, and when it is considered only prima facie evidence of negligence, we held in Kisling v. Thierman, supra, that all violations of statutory requirements are negligence "per se" (unless a legal excuse is shown), except the requirement that vehicles meeting each other on the highway shall give one-half of the traveled roadway by turning to the right. We held that a violation of this requirement is only "prima facie" evidence of negligence. The reasons for this exception to the rule are fully set out in the case of Kisling v. Thierman, supra, and we deem it unnecessary to repeat them here.

As the chief ground of negligence complained of was the failure of defendant's driver to turn to the right by giving the decedent one-half of the roadway, we think the jury should have been specifically instructed that a failure to do so constituted only *"prima facie"* evidence of negligence. In view of the fact that the court failed to give such an instruction, and in view of the further fact that the jury was specifically instructed that, if the defendant's driver did not obey the statutory requirement as to giving decedent one-half of the roadway, *he would be guilty of negligence,* we believe the instruction given was prejudicial to the rights of the defendants and constituted error. Ryan v. Perry Rendering Works, 215 Iowa 363, 245 N. W. 301; Lang v. Siddall, 218 Iowa 263, 254 N. W. 783; Despain v. Ballard, 218 Iowa 863, 256 N. W. 426.

Similar instructions have been held prejudicial in a long line of our cases referred to in Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552, and Lang v. Siddall, supra, loc. cit. 270.

Many other errors are assigned, but in view of the error pointed out, a consideration of them is not deemed necessary.

For the reasons hereinabove given, the judgment of the lower court is hereby reversed.

STEVENS, EVANS, ALBERT, ANDERSON, KINDIG, DONEGAN, and CLAUSSEN, JJ., concur.